UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
JOHN T. LANDERS, Member TWU Local 100,  :
:
                      Plaintiff,  :
:        **MEMORANDUM & ORDER**
                -against-  :
:        12-CV-703(DLI)(LB)
:
JOHN SAMUELSON, President, TWU Local 100,  :
EARL PHILLIPS, Secretary-Treasurer TWU Local  :
100, BENITA JOHNSON, Recording Secretary TWU  :
Local 100, *et al.*,  :
:
                      Defendants.  :
:
-------------------------------------------------------------------- x
**DORA L. IRIZARRY, United States District Judge:**

      Plaintiff John T. Landers is a Member of the Transportation Workers Union of Greater New York ("Local 100"). Plaintiff filed the instant action against John Samuelson, Local 100's President, Earl Phillips, Local 100's Secretary-Treasurer, and Benita Johnson, Local 100's Recording Secretary, asserting that they violated his rights under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411, 412, and the Labor-Management Relations Act ("LMRA"). (*See* Complaint, Doc. Entry No. 1.) On February 22, 2012, Plaintiff filed an application for a temporary restraining order ("TRO"), seeking to enjoin Local 100 from purchasing office space. On March 8, 2012, the Court held a hearing on Plaintiff's application.

## BACKGROUND

      More than two years ago, Local 100's Executive Board began looking for real estate to purchase to relocate Local 100's office from its current location, which they rent, to a new location, which they would own. After several failed negotiations for other locations, they were able to reach an agreement for the purchase of several floors of a commercial condominium

located at 195 Montague Street in Brooklyn, New York. On September 29, 2012, the Executive Board voted to approve the purchase. On October 11, 2011, President Samuelson signed a purchase agreement indicating Local 100's intention to purchase the office space at 195 Montague Street. On October 14, 2011, the Executive Board of Local 100 sent an email to its members informing them of the pending purchase of 195 Montague Street. The Executive Board sought approval for the purchase from the Transportation Workers Union of America ("International"), the parent organization to Local 100 (which it received on February 10, 2012).

On December 3, 2011, Local 100 held a meeting, which was open to its full membership. (12/3/11 Membership Assembly Meeting Transcript, attached as Ex. B. to the Declaration of Larry Cary.) At this meeting, plaintiff asked for the opportunity to speak. He challenged President Samuelson's decision to promote a particular union member within the union. He asked about the status of wage negotiations, and then asked:

> Can we put a motion on the floor regarding the purchase of those three floors down at 195 Montague Street? We want, we want a say in this, okay, John? Not just you guys. We want a say where this 21 million is going. [T]he, the members deserve a right to vote on this. And I am asking that a motion be placed on the floor, and second, and see whether or not the members actually want the purchase of three floors in downtown Brooklyn.

(*Id.* at 3:1-10.) With respect to the building purchase, President Samuelson explained the process under which the Executive Board had the authority to purchase the property on behalf of Local 100. He then concluded by saying "the contract is signed, we're moving in, we're going to be saving $100,000 a month, of Local 100's monies, that's going to get pumped back into the membership, and this is not the time for politics around the building sale." (*Id.* at 5:7-15.) On February 10, 2012, Local 100 received authorization from International's Administrative Committee to proceed with the purchase.

2

On February 9, 2012, plaintiff, proceeding *pro se*, filed the instant action against the defendants. The Court notes that since the filing of the complaint, Plaintiff has retained counsel in this matter. Plaintiff asserts that President Samuelson's denial of his request to bring a motion before the membership at the December 3, 2011 meeting violates the LMRDA. Plaintiff asserts that Local 100 cannot purchase the office space at 195 Montague Street without a vote of the full membership. Defendants contend that in purchasing the office space they operated in accordance with International's Constitution and Local 100's bylaws. By way of remedy, Plaintiff seeks an immediate and permanent injunction prohibiting the purchase of 195 Montague Street and any future purchases by Local 100 without obtaining a vote of approval from the general membership.

Before the Court is Plaintiff's motion for a temporary restraining order ("TRO") prohibiting Local 100's purchase of 195 Montague Street. Defendants oppose the motion and move to dismiss the action for lack of subject matter jurisdiction. For the reasons set forth below, the motion for a TRO is denied and the action is dismissed with prejudice for failure to state a claim.

## DISCUSSION

The standards for a temporary restraining order are the same as those governing the granting of preliminary injunctive relief. The general standard for issuing a preliminary injunction requires that the movant show: (a) irreparable harm and (b) either: (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *See Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F. 3d 506, 510 (2d Cir.

2005). "Such relief . . . is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id*.

Plaintiff is unable to satisfy the requirements for injunctive relief. *First*, he cannot demonstrate irreparable harm. Plaintiff first learned about the purchase of office space in an email sent from the Executive Board to the membership on October 14, 2011. Plaintiff should have filed the instant action and sought injunctive relief at that time. Instead, Plaintiff waited until February 9, 2012 to file this action, and until February 22, 2012 to seek injunctive relief. A delay of four months negates the alleged urgency of Plaintiff's request to stay the purchase of the office space.[1] *See Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics, Inc.*, 454 F. Supp. 2d 62, 68-69 (E.D.N.Y.) (holding that plaintiff failed to establish irreparable harm when plaintiff waited five months to seek injunctive relief after learning of the facts that gave rise to his lawsuit).

*Second*, plaintiff is unable to show a likelihood of success on the merits. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard under Rule 8 does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A complaint does not "suffice if it tenders

---

[1] The Court notes that Plaintiff did initiate internal grievance proceedings, seeking to appeal, internally, Samuelson's denial of his request to place a motion before the full membership at the December 3, 2011 meeting. Given the apparently involved and possibly lengthy administrative remedial process as set forth by defense counsel at the March 8, 2012 hearing, and the tight timeline for the real estate transaction in question, it was unrealistic for Plaintiff to wait until the conclusion of the internal administrative proceedings before seeking judicial relief to enjoin the transaction.

Moreover, it is apparent from defendants' position, stated at the March 8th hearing, that the result of the internal administrative proceedings would be no different. International's Constitution does not give the membership the right to vote on real property transactions and, therefore, Plaintiff's grievance would have been dismissed as there was no basis for his claims. Thus, Plaintiff's democratic rights as a member of Local 100 were infringed by neither the Executive Board's purchase of the office space at 195 Montague Street nor Samuelson's denial of Plaintiff's request to place the issue before the membership for a vote. Plaintiff has not suffered irreparable harm.

'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Twombly*, 550 U.S. at 555.

On a Rule 12(b)(6) motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Taylor v. Vt. Dep't of Educ.*, 313 F. 3d 768, 776 (2d Cir. 2002). The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 153 (2d Cir. 2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F. 3d 69, 72 (2d Cir. 1995).

As a matter of law, Plaintiff's Labor Management Reporting and Disclosure Act ("LMRDA") claim is insufficient. The complaint alleges that the union violated the LMRDA, 29 U.S.C. § 411, specifically, the "Bill of Rights and bylaws of labor organizations," in denying his request to place a motion before the full assembly to vote on whether or not to purchase the office space. The Court construes the pleadings to allege a violation of § 101(a)(1), the equal rights provision of the LMRDA. Under that provision:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organizations, constitution and bylaws.

29 U.S.C. § 411(a)(1).

To bring a claim under this provision, a plaintiff must establish that he or she was denied the right to vote on an issue on which other members of the union were permitted to vote. As the Second Circuit has explained, "to be viable, a claim under § 101(a) must . . . allege the denial of some privilege or right to vote *which the union has granted to others.*" *Members for a Better Union v. Bevona*, 152 F. 3d 58, 65 (2d Cir. 1998) (emphasis added). There are no allegations that other members of Local 100 were given the opportunity to vote on the purchase of the office space. Nor would there be. Under International's Constitution, which is binding on Local 100, "[t]he Local Executive [B]oard shall have the power, subject to the prior approval of the International Administrative Committee, to purchase . . . such real property as may be convenient or necessary for the proper functioning of the Local Union." Art. XIV, § 12. Furthermore, the membership of Local 100 is the supreme governing body of Local 100, except for those powers that International's Constitution delegates to Local 100's Executive Board. *See* Art. XII, § 2. These provisions delegate exclusive power to the Executive Board to purchase real property.[2] As such, even if Local 100's leadership's action here was unfair to Plaintiff, such unfairness does not create an actionable claim as "the same detriments applied equally to all members" and thus, were not discriminatory. *Bevona*, 152 F. 3d at 65.

The Court concludes that the Executive Board, at President Samuelson's direction, properly followed these procedures when the Executive Board pursued the purchase of office space at 195 Montague Street. The Executive Board had the authority to make the commitment to purchase the office space without requiring a vote from Local 100's general membership,

---

[2] The Court concurs with defendants' interpretation of these provisions, *i.e.*, that these provisions vest the Executive Board with exclusive authority to purchase real property on behalf of Local 100, subject only to approval by International's Administrative Committee. Contrary to Plaintiff's contention, this interpretation is consistent with a reading of International's Constitution as a whole. Moreover, it is the only interpretation that can be considered practical, given the subject matter. Local 100 boasts a membership of 38,000 transit workers. It is not feasible to permit a body of such magnitude the right to vote on real property transactions. No seller would be able to accommodate a request from the full membership to visit and inspect the property. Furthermore, negotiations could not proceed if each offer and counter-offer required a vote from the full membership.

6

subject only to the approval from International's Administrative Committee. The Executive Board complied with the procedures required under International's Constitution and Local 100's bylaws.[3]

Under these circumstances, there is no colorable claim under § 101(a).[4] First, neither Plaintiff nor his fellow, at-large, union members are entitled to vote on this issue. Second, the denial of Plaintiff's request to put the issue before the full membership did not result in discrimination against Plaintiff because no other members of Local 100 had the opportunity to vote on the issue. Moreover, the Executive Board of Local 100 has informed the membership that the purchase would inure to the benefit of its members in a yearly savings of approximately $1,000,000 that Local 100 could use to the benefit of its members. As such, the Executive Board appears to be acting in a manner intended to benefit all members of the union.

Finally, the balance of hardships does not weigh heavily or at all in Plaintiff's favor. The Executive Board spent two years and several hundred thousand dollars in attorneys' fees on procuring permanent office space for Local 100. Upon learning of the purchase, Plaintiff waited four months before filing the instant action and even longer in requesting injunctive relief. The due diligence period for the purchase expires on March 9, 2012, tomorrow, thereby finalizing the purchase agreement. The defendants have indicated that the seller might rescind the purchase

---

[3] Moreover, to the extent that the complaint can be construed as raising a claim under § 301(a) of the Labor Management Relations Act ("LMRA"), the claim lacks merit. A "[u]nion's interpretation of its own constitution is entitled to great deference . . . to avoid interference with internal union affairs . . . and therefore the interpretation of bylaws provisions by [u]nion officers will be upheld unless patently unreasonable." *Sim v. New York Mailers' Union No. 6*, 166 F. 3d 465, 470 (2d Cir. 1999) (affirming dismissal of plaintiffs' § 301(a) claim). It was not "patently unreasonable" for the Executive Board to interpret International's Constitution as vesting it with the exclusive authority to purchase real property. In fact, the provisions of International's Constitution set forth above expressly and clearly provide the Executive Board with such authority. Accordingly, Plaintiff's claim arising under § 301(a) of the Labor Management Relations Act is insufficient as a matter of law.

[4] The Court notes that, in concluding that the complaint fails to allege any evidence of discriminatory conduct, this Court is deprived of subject matter jurisdiction. *See Bevona*, 152 F. 3d at 62 (explaining that "the existence of jurisdiction under § 102 depends upon whether the specific allegations in the complaint reflect an infringement of rights protected under Title I the LMRDA" and vacating the temporary restraining order with instructions to dismiss the case) (citing *Calhoon v. Harvey*, 379 U.S. 134, 138 (1964)).

7

agreement if Local 100 is unable to fulfill its obligations, *i.e.*, finalize the agreement by March 9, 2012. Local 100 asserts that its current space is overly expensive, crowded, and does not properly serve its membership, and the new property would result in a $1,000,000 yearly cost savings to the membership. The hardships do not weigh in Plaintiff's favor under these circumstances.

## CONCLUSION

Accordingly, the Court denies Plaintiff's request for injunctive relief as Plaintiff is unable to demonstrate irreparable harm, a likelihood of success on the merits, or that the hardships weigh in favor of granting his request. Further, the complaint is dismissed as the claims asserted are insufficient as a matter of law, thereby depriving the Court of subject matter jurisdiction.

SO ORDERED.

Dated: Brooklyn, New York
       March 8, 2012

/s/
DORA L. IRIZARRY
United States District Judge